WISEMAN, *Appellant,* v. CULVER.

Division One, March 5, 1894.

1. **Contract**: APPELLATE PRACTICE:  ESTOPPEL.  Where the petition
and evidence proceeded on the theory that the suit was for money
due on the purchase of a patent right improvement, plaintiff can not
for the first time on appeal claim as the measure of his damages the
difference between the price and the value of the improvement on the
ground that he intended to retain the latter.

2. ———: INSTRUCTION. The court properly instructed the jury that even if they believed the contract was made between the plaintiff and the defendant of the character stated in the petition, still the plaintiff could not recover if the defendant, to the knowledge of the plaintiff, made the same for the corporation of which he was the president and not on his own behalf.

3. Practice: BURDEN OF PROOF: HARMLESS ERROR. An erroneous instruction on the burden of proof which did not prejudice the appellant will not cause a reversal of the judgment.

*Appeal from St. Louis City Circuit Court.*—HON. JACOB KLEIN, Judge.

AFFIRMED.

*H. M. Pollard* for appellant.

(1) The court erred in the matter of the measure of damages. In *Hartzell v. Crumb,* 90 Mo. 629, this court holds that the measure of damage is the same in suits for breach of contract for sale of personal as for the sale of real property, and at page 639 it says: "Where the purchase money has not been paid, the measure of damage is the difference between the contract price and the value of the property at the date of the breach." To the same purport are the cases of *Lumber Co. v. Warner,* 93 Mo. 374; *Wire Co. v. Ten Broeck,* 97 Mo. 289; *Rickey v. Ten Broeck,* 63 Mo. 563; *Doffins v. Edmunds,* 18 Mo. App. 307. (2) The evidence, given over plaintiff's objection, showing what business the Wrought Iron Range Company was engaged in, was clearly an error. It was wholly immaterial to any issue in the case. (3) Instruction numbered 3 was improvidently given, for there is no testimony from any source that plaintiff ever contracted to sell his patent to the Wrought Iron Range Company or that plaintiff ever thought of such a thing. (4) Defendant's seventh instruction is also fatally defective, in that it declares the law to be that the contract of hiring must

have "been reduced to writing, and signed by the defendant." Now, the statute says that any memorandum or note of the agreement is sufficient. It need not be, as the instruction declares or intimates, certainly, fully and formally reduced to writing; any note thereof is sufficient. *Moore v. Mountcastle*, 61 Mo. 424; *Christensen v. Wooley,* 41 Mo. App. 53; *Greely-Burnham Co. v. Capen*, 23 Mo. App. 301.

*Lee, McKeighan & Priest* for respondent.

BLACK, P. J.—The petition is in two counts. The first states that on the thirtieth of December, 1886, the plaintiff and defendant entered into a verbal agreement, whereby they became partners for the purpose of making and selling street car heaters; that the plaintiff agreed to convey to defendant fifty-one hundredths interest in a patent improvement in street car heaters, in consideration of which defendant agreed to pay the plaintiff $3,000, $1,500 in cash and $1,500 in heaters, at a fair valuation, to be manufactured by the defendant and delivered to plaintiff in 1887; that plaintiff executed and tendered to defendant an assignment of said interest in the patent, and demanded the sum of $1,500, which defendant refused to pay. The prayer is for $3,000 damages with interest.

The second count states that on the same day the plaintiff and defendant entered into a verbal contract, whereby it was agreed plaintiff should work for the said partnership for one year, in selling heaters, at a salary of two thousand dollars a year and expenses, which amount defendant agreed to pay the plaintiff; that plaintiff commenced and continued the work until defendant notified him to quit. Prayer for $2,000 damages.

To each count defendant answered by way of a gen-

eral denial.  For a further defense to the first count it is alleged that no note or memorandum in writing was ever made, of the alleged contract; and that no such contract was made either verbal or in writing.  The further answer to the second count is that the supposed agreement was not to be performed within one year from date, and no note or memorandum in writing was ever made or signed by either party; and that no such contract, verbal or written, was ever made by the plaintiff and the defendant.  There was a verdict and judgment for defendant.

There is no dispute in the evidence as to the following facts:  The plaintiff was the owner of a patent invention for an improvement in street car heaters. The patent had been issued to him about a month before the date of the alleged contract.  Plaintiff had placed a heater in a car belonging to the Union Depot Railway Company, a corporation operating a street railroad in the city of St. Louis.  This railroad is also called in the record the Scullin line.  The defendant was the president of the Wrought Iron Range Company, a corporation engaged in manufacturing ranges, steel furnaces, and other heating apparatus in the city of St. Louis.  At the date of the alleged contract, the plaintiff was endeavoring to organize a corporation for the purpose of manufacturing heaters.  He and a Mr. Messmore and a Mr. Case went to the office of the Wrought Iron Range Company with a view of inducing the defendant to become president of the proposed corporation.

There is much conflict in the evidence as to what was said at that time.  According to the evidence of the plaintiff the defendant proposed to buy a fifty-one per cent. interest in the patent and pay the plaintiff therefor $3,000; $1,500 to be paid in cash and $1,500 in heaters out of the first that were manufactured, and to give the defendant a salary of $2,000 a year and travel-

ing expenses for introducing and selling them.  He
says he spoke to his friends, Messmore and Case, and
they advised him to accept the proposition and he did
accept it then and there.  He then asked the defendant
what he should do with the proposed stockholders in
his corporation, and the defendant said, "go and tell
them the trade is off; you are going into partnership
with me."  On the next day the plaintiff returned, but
the defendant refused to carry out the contract in any
respect.

According to the evidence of the defendant he at
first told the plaintiff and his friends that the Wrought
Iron Range Company would not be able to enter into
any arrangements to manufacture the heaters.  Plain-
tiff then stated that he had put one or two heaters on
the Scullin line and they were a success—satisfactory
to the superintendent of that line.  They then talked
over what might be done in manufacturing the heaters
by the Wrought Iron Range Company.  The verbal
talk, he says, was about as stated, having reference as
we understand, to the evidence of the plaintiff.  He
goes on to say that the matter was to be investigated
and writings were to be drawn up, if the heater was as
the plaintiff had represented it, that is to say, satisfac-
tory to the Scullin line.  The defendant testified
further that plaintiff and Messmore left with the under-
standing that he would see or have some one see the car
company.  On the next day he sent an employee of the
Wrought Iron Range Company to see about the heater
in use, and this employee reported that it was a failure.
On the day this report came back to the defendant, the
plaintiff appeared again at the office of the Wrought
Iron Range Company, and the defendant told him what
the report was, and that his company would not manu-
facture the heaters, or have anything to do with them.
The evidence of the car company people is that the

heater placed on one car did not give satisfaction—that it was a failure.

1.   The first complaint is that the court erred in holding the measure of damages on the first count to be $3,000, the contract price of the interest in the patent.   The claim made here is that the true measure of damages was the difference between the contract price and the value of the fifty-one hundredths interest in the patent, and that evidence of the value of the patent should have been received.

During the examination of the plaintiff his counsel asked him whether the proposed corporation was formed or abandoned, to which question the defendant objected.   The court then said: "You are not claiming damages for breach of the contract; you are suing on the contract?"   To which counsel for plaintiff answered: "Yes, sir."   *By the Court:*  "You claim that so much money is due under the terms of the contract?"   To which counsel for the plaintiff made no answer, but proceeded to interrogate the witness on other points.   Later in the examination of plaintiff his counsel asked him whether he attempted to dispose of the patent, and he said he did.   Objection being made and sustained, the plaintiff excepted.   The answer given by the witness was not stricken out, nor did counsel for plaintiff state the purpose of the evidence, but without further remark proceeded with the examination on other issues.   The whole complaint as to error in the measure of damages and exclusion of evidence in respect thereto, stands on the above facts. At the close of all the evidence, the court at the request of the plaintiff, told the jury that the measure of damages on the first count was $3,000 and interest.

The plaintiff is in no position to say the trial court erred as to the measure of damages, or in excluding evidence in respect to damages.   He declared for the

contract price of the interest in the patent, and stated that to be his claim at the outset of the trial, and made no other claim during the trial. As he tried his case on the theory that he held the interest in the patent for the use and benefit of the defendant, and was therefore entitled to recover the alleged contract price, he can not be permitted to now turn around and say he intended to retain the interest in the patent, and his measure of damages should therefore be the difference between the contract price and the value of the patent. Parties will not be allowed to thus change front when they come to an appellate court.

2. It is next objected that the court erred in giving the third instruction asked by the defendant, because there was no evidence upon which to base it. This instruction told the jury that even if they believed a contract was made between the plaintiff and the defendant of the character stated in the petition, still the plaintiff could not recover, if the defendant, to the knowledge of the plaintiff, made the same for and in behalf of the Wrought Iron Range Company, and not on his own behalf.

The testimony of the plaintiff himself shows that he and his friends called upon the defendant because they knew he was engaged in manufacturing furnaces, and they do not pretend to claim that they even supposed he was engaged in the business otherwise than as the representative of the company of which he was president. The testimony of the defendant shows that in the conversation with plaintiff and Messmore he spoke of what his company could do and what it could not do, and that his company would not manufacture a worthless article, and they must know the article had merits before they would undertake to make it. The defendant had no factory of his own, and the plaintiff does not claim that he said he had. This evidence

being true, the jury had the right to draw the conclusion from it that the defendant negotiated for his company and that the plaintiff must have known it. The objection to the instruction is clearly not well taken.

3. There can be no doubt but the parties had an understanding as to the general terms of a contract at the first conversation; and the real question in the case was one of fact, that is to say, whether they then concluded the contract, as plaintiff insists, or whether it was left open for the defendant to see whether the heater had been tested by, and was satisfactory to, the Scullin railroad line. The plaintiff's theory of the case was completely covered by the third instruction given at his request; and the defendant's theory was fully presented by the fourth and seventh instructions given at his request. The only difficulty arises out of that part of the defendant's fifth instruction which speaks of the burden of proof. That instruction is to the following effect: If no final and complete contract was made between plaintiff and defendant, that whatever contract was contemplated was subject to the condition that before it should be binding it should appear that the car heater was satisfactory to the Scullin car line, then the burden is on the plaintiff to show by a preponderance of the evidence that the car heater "had been tested by said line;" and if the jury are not so satisfied by the evidence their verdict must be for defendant.

The burden was on the plaintiff from the beginning to the end of the case to show by a preponderance of the evidence that the contract was as stated in the petition; but it was not upon him to establish one of a series of facts brought forward by defendant to disprove the contract set up by plaintiff. Under the pleadings, the burden was not upon the plaintiff to show

that the heater had been tested by the Scullin line, and the instruction should not have been given; but it is clear the giving of it was not prejudicial to the plaintiff. The proof on both sides shows that the heater had been tested by the Scullin line. As to this there was no dispute in the evidence, and this being so, the instruction could not have prejudiced the plaintiff. The real question was whether the contract was to stand as an open one until it appeared the heater had been tried and approved by the Scullin line. That it had been tested by that line was an undisputed fact on the trial, and it may be stated that it stands as an undisputed fact that the heater was not satisfactory to that line.

Some other questions are discussed in the briefs, but they do not affect the merits of the case, and need not be considered. Judgment affirmed. BARCLAY, J., absent. The other judges concur.